UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

S.H.S. RESORT, LLC                      Case No.: 8:10-bk-25886-MGW
                                        Chapter 11 Case


        Debtor.
_____/


## S.H.S. RESORT, LLC'S, SECOND AMENDED[1] CHAPTER 11
## PLAN OF REORGANIZATION, DATED AS OF APRIL 6, 2011


## ARTICLE I
## SUMMARY

S.H.S. Resort, LLC's, Second Amended Chapter 11 Plan of Reorganization, dated as of April 6, 2011 (the "Plan"), filed pursuant to Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"), proposes to pay creditors and make distributions to the equity security holders of S.H.S. Resort, LLC ("S.H.S.," "Debtor," "Debtor-In-Possession" or "Reorganized Debtor," as appropriate) over a period of time beginning on the Effective Date (as defined herein), from funds generated by the ongoing operations of the Debtor through the use of its primary asset, the real property and improvements constituting the Safety Harbor Resort and Spa ("Resort") and from the sale or surrender of other parcels of real property owned by the Debtor. The legal description for the Resort and surrounding property owned by the Debtor (collectively, the "Property") is provided on **Exhibit "B"** as attached to the Disclosure Statement previously filed in support of the Plan**.**

This Plan provides for one (1) class of Priority Claims; one (1) class of Secured Claims of the Pinellas County Tax Collector and/or any Tax Lien Certificate Holders; one (1) class of Secured Claims of Wells Fargo Bank; one (1) class of Other Secured Claims; one (1) class of Unsecured Claims of general trade creditors; one (1) class of Undersecured Claims of Wells Fargo Bank by virtue of its undersecured interest in the Property; one (1) Administrative Convenience Class of unsecured creditors; one (1) class of Unsecured Claims of insiders and other affiliates of the Debtor; and one (1) class of Equity Security Holders.

All Creditors and Equity Security Holders should refer to the remainder of this Plan and the related Disclosure Statement for information regarding the precise treatment of their claim. The Disclosure Statement, which provides more detailed information regarding this Plan and the rights of Creditors and Equity Security Holders, was previously circulated with the original Plan.

---

[1] Amended only to improve the treatment afforded to Secured Lender and to provide for treatment of the secured claims of Ford Motor Credit Company, LLC, with respect to two vehicles in which FMC holds a security interest.

**Your rights may be affected.
You should read these papers
carefully and discuss them with
your attorney, if you have one.
If you do not have an attorney,
you may wish to consult one.**

# ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01 <u>Class 1</u>.   All Priority Claims.
         **(Employees of the Debtor; Florida Department of Revenue; and possibly others)**

2.02 <u>Class 2</u>.   The Secured Claims of the Pinellas County Tax Collector.
         **(Pinellas County Tax Collector and/or Tax Lien Certificate Holders)**

2.03 <u>Class 3</u>.   The Claims of the Secured Lender, to the extent allowed as a Secured Claim under § 506 of the Code.
         **(Wells Fargo Bank)**

2.04 <u>Class 3A</u>.   The Claims of Other Secured Creditors.
         **(Ford Motor Credit Company, LLC)**

2.05 <u>Class 4</u>.   The Claims of all Non-Insider Unsecured Trade Creditors, to the extent allowed pursuant to § 502 of the Code.
         **(Various)**

2.06 <u>Class 5</u>.   The Undersecured Claims of Secured Lender
         **(Wells Fargo Bank)**

2.07 <u>Class 6</u>.   The Administrative Convenience Class of Unsecured Claims
         **(Various)**

2.08 <u>Class 7</u>.   The Unsecured Claims of Insiders and Affiliates of the Debtor
         **(Olympia Hotels Management, LLC; and possibly others)**

2.09 <u>Class 8</u>.   Equity Security Holders of the Debtor
         **(Olympia Investment Group, LLC)**

## ARTICLE III
## TREATMENT OF UNITED STATES TRUSTEE'S FEES

3.01 <u>United States Trustee Fees</u>. All fees required to be paid by 28 U.S.C. §1930(a)(6) ("U.S. Trustee Fees") will accrue and be timely paid until the case is closed, dismissed, or converted to another Chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.


## ARTICLE IV
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS

4.01 <u>Administrative Claims</u>. All Allowed Administrative Expense Claims are required to be paid on or before the Effective Date pursuant to 11 U.S.C. §§503, 507 and 1129. Any Allowed Administrative Expense Claims which are not paid before the Effective Date of this Plan will be paid on the Effective Date.

**The Remainder of this Page Intentionally Left Blank**

# ARTICLE V
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

5.01    Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 –Priority Creditors | Impaired. | Priority Creditors will be paid in full over the course of five years from the Effective Date of this Plan along with interest at the rate of 12% from Estate Assets. |
| Class 2 – Secured Claim of Pinellas County Tax Collector and Tax Lien Certificate Holder(s) | Impaired. | The Secured Claim of the Pinellas County Tax Collector and/or of any Tax Lien Certificate Holders will be paid a tax amount consistent with the valuation of the subject property, or such principal amount as may be reflected on the face of the tax lien certificate, which shall constitute its allowed claim amount in annual payments to be made over the course of five years from the Effective Date of this Plan along with interest at the rate reflected on the face of the tax lien certificate or at the rate of 12% per annum, whichever is lower, from Estate Assets. As a result of the treatment afforded herein, the Pinellas County Tax Collector and any Tax Lien Certificate Holders will be precluded from exercising their statutory rights and remedies normally afforded in the collection of delinquent ad valorem real estate and tangible personal property taxes or collection under such tax lien certificates.  To the extent that any claimant in this class has a lien which is secured, in part, by property to be sold pursuant to this Plan or pursuant to 11 U.S.C. § 363, such claimant shall have an appropriate proportion of its claim satisfied out of proceeds from the sale of the Property at closing. |

| Class 3– Secured Claim of Secured Lender. | Impaired. | The Property constituting Secured Lender's collateral was valued by stipulated Order of the Bankruptcy Court entered January 25, 2011 (Doc. No. 118). The $13,857,816.67 valued amount will be paid as follows: |
|---|---|---|
| | | The Debtor will pay the Secured Lender the Net Sales Proceeds from the sale of 6.75 acres of undeveloped land on the Property, which will be sold pursuant to the Purchase and Sale Agreement as appended to the Debtor's Motion for Authorization to Sell Property Free and Clear of Liens (Doc. 160). |
| | | The remaining Principal amount of approximately $11,057,816.67 will then be further paid down from a sale of non-debtor property under one of two options to be elected by Wells Fargo prior to the commencement of the Confirmation Hearing: |
| | | A.  From $5M of nondebtor cash, Wells Fargo would receive an additional $3M paydown against the secured debt with $2M being used to pay the Class 4 Claims and to make some improvements to the Property. |
| | | OR |
| | | B.  From $5M of nondebtor cash, Wells Fargo would receive an additional $4M paydown against the secured debt with $1M being used to pay the Class 4 Claims and to make some minimal improvements to the Property; |
| | | The remaining Principal, less the sum of adequate protection payments made during the Chapter 11 case prior to the Effective Date, will be paid on the basis of a 25 year amortization, with a ten year balloon payment at interest rate of the Prime Rate of interest (determined annually on January 1 of each year) plus 1% interest, subject to an interest rate floor of 4.25%. Each year the interest rate will adjust on the anniversary date of the Effective Date and may be adjusted upwardly or downwardly up to 0.5% per year based upon the Prime Rate plus 1% formula ("Note A").  The Note A payments will be paid from operational cash flow. |
| | | Further, the owners of Olympia Development Group ("ODG") will contribute 100% of their stock in ODG |

| | | |
|---|---|---|
| | | to the Debtor in the form of a merger of ODG into the Debtor in an effort to provide enhanced enterprise value and liquidity to the Debtor. The net income from the ODG income, net of the Class 5 distributions, will be paid to Wells Fargo, as is set forth below. The additional ODG income will provide the Debtor with additional free cash to meet its Plan obligations.<br><br>While payments are made, as set forth above, the Guarantors shall not be liable for any amounts to Secured Lender over and above the repayment of the Net Principal, as outlined above. Any claims against the Guarantors shall be stayed indefinitely as long as timely payments are made on the Net Principal monthly on the Note A and Note B obligations. At the conclusion of the Reorganized Debtor making all payments of the Net Principal during the Note Period, the Guarantors shall be fully and finally released. |
| Class 3A—Other Secured Creditors | Unimpaired. | Ford Motor Credit Company, LLC ("FMC"), holds a claim secured by the 2008 Ford Econoline Van, VIN# FBNE31L18DB25552 and a separate claim secured by that certain 2008 Ford Econoline Van, VIN# 1FBNE31L98DA95782 (collectively, the "Vehicles"), by virtue of installment sales contracts between FMC and the Debtor as to the Vehicles (the "Contracts"). The Debtor will make regular monthly payments to FMC pursuant to the terms of the Contracts until its obligations to FMC are satisfied in full. |
| Class 4 - Non-Insider Unsecured Trade Creditors | Impaired. | Non-Insider Unsecured Trade Creditors holding Non-Insider Allowed Claims will be paid through a series of Distributions totaling ninety percent (90%) of their Allowed Claim, without interest, to be made on a quarterly basis, at a rate of four and a half percent (4.5%) of their Allowed Claim per quarter, beginning on the Effective Date of this Plan and continuing for a period of five years. Any Disputed Claim or Claim for which an objection has been interposed shall have its proportionate quarterly distributions disbursed into a segregated escrow account pending the resolution of the claim objection. |

| | | |
|---|---|---|
| Class 5 - Undersecured Claims of Secured Lender | Impaired | On account of its Allowed Undersecured Claim, the Secured Lender will receive from the Debtor, through its post-confirmation subsidiary, ODG, from its non-Debtor Wachovia Securities Walgreens Portfolio's operations, a $4,000,000.00 dividend on its undersecured deficiency at a rate of $500,000.00 per year for four years with the balloon coming on the fourth anniversary of the Effective Date from the sale or refinance of the Wachovia Securities Walgreens Portfolio. |
| Class 6 – Administrative Convenience Class of Unsecured Claims | Impaired. | Any Claimant holding a Claim in Class 4 or 5 may elect to voluntarily reduce the amount of their Allowed Claim to $1,000.00 ("Reduced Allowed Claim") and to have such Reduced Allowed Claim paid in full within 90 days of the Effective Date in complete satisfaction of the Claimant's Claim. |
| Class 7 – Unsecured Claims of Insiders and Affiliates of the Debtor | Impaired | Unsecured Creditors who are Insiders or Affiliates of the Debtor will be paid by the Debtor only after all Class 1-6 Allowed Claims have been paid in full. Any Disputed Claim or Claim for which an objection has been interposed shall have its proportionate quarterly distributions disbursed into a segregated escrow account pending the resolution of the claim objection. |
| Class 8 – Equity Security Holders of the Debtor | Impaired | Equity Security Holders shall receive, on account of their contribution of a portion of their ownership interests in other business ventures, a distribution of membership interests in the Reorganized Debtor consistent with their current Equity Security holdings. |

# ARTICLE VI
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

6.01    Disputed Claim.    A disputed claim is a claim that has not been allowed or disallowed by a final, non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

6.02    Delay of Distribution on a Disputed Claim.    No distribution will be made on account of a disputed claim unless such claim is allowed by a final, non-appealable order. However, if, at the time a distribution would be made pursuant to the provisions of this Plan but for the existence of an objection to a Claim, a Claim is a Disputed Claim, a distribution shall be made into a segregated account pending resolution of the objection to the Claim, the same as if the Claim were not a Disputed Claim.

6.03    Settlement of Disputed Claims.    The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

# ARTICLE VII
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.01    Assumed Executory Contracts and Unexpired Leases.

(a)     Other than as is set forth herein, the Debtor will elect, seven days prior to Confirmation Hearing, which Executory Contracts and Unexpired Leases to assume and which to reject with such decisions to be effective as of the Effective Date of this Plan.

(b)     The Debtor will assume the Management Agreement with Olympia Hotels Management, LLC.

(c)     The Debtor will assume all pre-petition agreements for Booked Events at the Resort and Spa.

(d)     The Debtor will assume all pre-petition gift card, coupon and "Groupon" obligations incurred in the ordinary course of the Debtor's business operations.

(e)     The Debtor will assume all Spa Membership agreements incurred in the ordinary course of the Debtor's business operations.

7.02    Rejection of Executory Contracts and Unexpired Leases.

Upon the Effective Date, the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed pursuant to section 7.01 above, or before the date of the order confirming this Plan by separate Motion to Assume or Reject Executory Contract. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE VIII
## MEANS FOR IMPLEMENTATION OF THE PLAN

8.01    The Reorganized Debtor will continue to operate the Resort and will fund all distributions required under this Plan from such Operations. The Reorganized Debtor will also explore the sale or development of any vacant parcels on the Property to their highest and best use in order to create addition revenue from which to fund Plan distributions; at present, the Debtor expects a sale or refinancing of an approximately 6.75 acre parcel in connection with such efforts.

8.02    The Reorganized Debtor, in conjunction with Olympia Hotels Management, LLC, will be responsible for management of the Resort and the Property. The Reorganized Debtor will pay all expenses from operating revenue as projected on the budget which is appended the Disclosure Statement.

8.03    The current Equity Security Holders will merge their ODG stock into the Reorganized Debtor which will, in turn, become a subsidiary of the Reorganized Debtor, in order to provide additional means for execution of the Plan obligations.

8.04    As stated above, the current Equity Security Holders will contribute to the Reorganized Debtor:

    A.      $5,000,000.00 of non-Debtor cash,

    B.      all of the equity in ODG,

    C.      $4,000,000.00 from the Wachovia Securities Walgreens Portfolio's operations, and

    D.      along with the cash flow, net of the foregoing, to be used as additional working capital for both the improvement of the subject Property and to assist in the liquidity and operational cash flow of the Reorganized Debtor.

## ARTICLE IX
## GENERAL PROVISIONS

9.01    Definitions and Rules of Construction.  The following definitions shall apply and supplement those set forth elsewhere in this Plan.  Terms which are not defined herein shall have the same meaning as is set out in the Bankruptcy Code:

Administrative Expense Claim: "Administrative Expense Claim" means any Allowed Claim of the kind described in § 507 of the Bankruptcy Code, or the costs and expenses of administration of this Chapter 11 Case which are allowed pursuant to Bankruptcy Code § 503(b), to the extent the holder of such Administrative Expense Claim asserts such claim in this Chapter 11 Case within the time fixed by any applicable administrative bar date set by the Bankruptcy Court, including, without limitation, any actual, necessary costs and expenses of preserving or operating the Debtor's estate, any indebtedness or obligation incurred or assumed by the Debtor post-petition, all allowances of compensation and reimbursement of expenses relating to this Chapter 11 Case which are allowed pursuant to an order of the Bankruptcy Court under Bankruptcy Code §§ 330 or 503, any fees or charges assessed against the Debtor's estate, or any other post-petition Claim arising against the Debtor.   This term "Administrative Expense Claim" shall include any Claim which falls within this definition, including, without limitation, the anticipated  or potential claims of the following persons:

      a.     Debtor's Counsel, and
      b.     Keystone Consulting Group, Inc.

Administrative Expense Claimant:   "Administrative Expense Claimant" means any Person holding an Allowed Administrative Expense Claim.

Administrative Expense Bar Date: "Administrative Expense Bar Date" means the last date for filing Administrative Expense Applications, that date being either at least fourteen (14) days prior to the hearing on Confirmation, or any continued hearing on Confirmation, or no more than thirty (30) days after the occurrence of the last event giving rise to the Administrative Expense Claim.

Affiliate: "Affiliate" shall have the same meaning as set forth in the Bankruptcy Code.

Allowed: "Allowed" means and includes, with respect to any Claim or Interest, (a) any Claim (other than a Disputed Claim) or Interest, proof of which was timely filed with the Clerk of the Bankruptcy Court on or before the Bar Date (or, by Order of the Bankruptcy Court was, after notice and a hearing, not required to be filed) or (b) any Claim (other than a Disputed Claim) or Interest that has been listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent and, in either case, (1) for which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed in this Plan, in the Bankruptcy Code, in the Bankruptcy Rules, or in a Final Order of the Bankruptcy Court, or (2) an objection has

been interposed and such Claim or Interest, or portion thereof, has been allowed by a Final Order of the Bankruptcy Court.

Allowed Amount, Allowed Claim or Allowed Interest: "Allowed Amount", "Allowed Claim" or "Allowed Interest" means the dollar amount in which a Claim or Interest is Allowed; provided however, that the Allowed Amount of a Claim or Interest shall not exceed the Estimated Amount of such Claim or Interest as determined pursuant to an Estimation Order. No amount shall be Allowed for or on account of: (1) punitive damages, (2) attorney's fees or other court costs, (3) penalties, (4) default rates of interest with respect to secured claims, (5) late fees, charges or other assessments in addition to the principal amount of the indebtedness or (6) post-petition interest with respect to unsecured or undersecured claims, on account of any Claim or Interest except as otherwise expressly specified in this Plan or provided by Final Order of the Bankruptcy Court.

Assumed Contracts: "Assumed Contracts" means those executory contracts and/or unexpired leases assumed pursuant to this Plan or other Order of this Court.

Ballot: "Ballot" means the ballot to be distributed to each holder of a Claim in any impaired Class in connection with solicitation of votes to accept or reject this Plan.

Ballot Date: "Ballot Date" means the date set by the Bankruptcy Court as the last date for timely submission of a Ballot accepting or rejecting this Plan, that date being **April 12, 2011**.

Bankruptcy Code: "Bankruptcy Code" or "Code" means Title 11 of the United States Code.

Bankruptcy Court: "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the Middle District of Florida, Ft. Myers Division, or, to the extent the reference is withdrawn, the United States District Court for the Middle District of Florida, Tampa Division.

Bankruptcy Rules: "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, as are in effect on the Petition Date or as hereafter amended to the extent such amendments are applicable to this Chapter 11 Case.

Bar Date: "Bar Date" means the last date for filing Proofs of Claim. The Bankruptcy Court previously set **January 11**, **2011** as the Bar Date in this case.

Booked Event: "Booked Event" means any reservation for an event—excluding hotel room reservations and individual spa appointments--made at the Resort after the Petition Date.

Booked Event Deposit: "Booked Event Deposit" means those deposits for Booked Events held in a segregated DIP account pursuant to the Order Granting Expedited Motion to Honor Pre-Petition Gift Cards, Deposits and Other Credits and to Establish a Booked Event Deposit Protocol (Doc. 45).

Business Day: "Business Day" means any day other than a Saturday, Sunday, or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

Cash: "Cash" means lawful currency of the United States of America and its equivalents.

Claim: "Claim" means (a) any right to payment (including, without limitation, a guarantee) from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, sole, joint, several, joint and several, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.  The term "Claim," when used with respect to litigation, also includes any claim which has been or could be asserted in the litigation.  Notwithstanding anything to the contrary contained herein, for purposes of this Plan, the term "Claim" shall be given the broadest possible meaning permitted by the Bankruptcy Code and applicable law, including, but not limited to, all manner and type of claim, whenever and wherever such claim may arise.

Claimant: A person or entity which holds a Claim.

Class: "Class" means a group of Claims or Interests classified together pursuant to this Plan.

Confirmation: "Confirmation" means the entry by the Bankruptcy Court of the Confirmation Order approving confirmation of this Plan or any subsequent version of such Plan.

Confirmation Date: "Confirmation Date" means the date the Confirmation Order is entered on the docket of the Bankruptcy Court pursuant to Bankruptcy Rule 5003; provided, however, that if, on motion, the Confirmation Order or consummation of this Plan is stayed pending appeal, and a bond is obtained and posted by the appellant so as to preserve defenses to a mootness argument on appeal, then the Confirmation Date shall be the later of the date of entry of the Final Order vacating such stay, or the date on which such stay expires, or the date upon which such stay is no longer in effect.

Confirmation Hearing: "Confirmation Hearing" means the hearing held by the Bankruptcy Court on confirmation of this Plan pursuant to Bankruptcy Code § 1129, now scheduled to occur on April 20, 2011, at 1:30 p.m. at the Sam M. Gibbons United States Courthouse, 801 N. Florida Ave, Tampa, Florida 33602.

Confirmation Order: "Confirmation Order" means the Order of the Bankruptcy Court confirming this Plan or any subsequent version of such Plan, whether or not such order is a Final Order.

Contingent: "Contingent" means a right that has not accrued and that is dependent upon a future event or events that has or have not occurred and may never occur.

Creditor and Claimant: "Creditor" and "Claimant" mean any party or entity having a Claim against the Debtor, including, but not limited to, Creditors with Priority Claims, Creditors with Administrative Expense Claims, Secured Lender, and General Unsecured or Undersecured Creditors.

Debtor, Debtor-In-Possession and Reorganized Debtor: "Debtor," "Debtor-In-Possession," and "Reorganized Debtor" mean S.H.S. Resort, LLC.

Disclosure Statement: "Disclosure Statement" means the Disclosure Statement filed in support of the Plan.

Distribution: "Distribution" means a distribution of Cash or other non-Cash consideration made by the Reorganized Debtor pursuant to the Plan.

Distribution Date: "Distribution Date" means any date that a Distribution is made under the Plan.

Disputed Claim: Prior to the date that an objection has been and may be timely filed by the Debtor or any other party in interest, a Claim shall be considered a "Disputed Claim" to the extent that:

    a.    the amount of the Claim specified in the proof of claim exceeds the amount of the Claim listed by the particular Debtor in the Schedules as not disputed, contingent, or unliquidated; or

    b.    the Claim was not listed by the particular Debtor in the Schedules; or

    c.    the Claim was listed by the particular Debtor in the Schedules as disputed, contingent or unliquidated; or

    d.    the Claim is reflected as unliquidated or contingent in the Proof of Claim.

A "Disputed Claim" shall remain disputed unless such objection has been withdrawn, overruled or denied in whole or part by a Final Order of the Bankruptcy Court or granted in whole or part by a Final Order of the Bankruptcy Court. Subsequent to that date, a "Disputed Claim" means a Claim as to which an objection has been or may be timely filed by the Debtor or any other party in interest and which objection, if timely

filed, has not been withdrawn, denied, or estimated by an order of the Bankruptcy Court. To the extent an objection relates to the allowance of only a part of a Claim, or to its status (e.g., priority, secured, unsecured), such Claim shall be a Disputed Claim only to the extent of the objection.

Effective Date: "Effective Date" means that date which is fourteen (14) days after the entry of the Confirmation Order on the docket by the Bankruptcy Court, assuming no Motions for Reconsideration or Notices of Appeal have been filed with respect to which a stay pending reconsideration or appeal has been obtained. The filing of a Motion for Reconsideration or Notice of Appeal, in the absence of a stay pending reconsideration or appeal, will not delay the Effective Date.

Equitable Subordination: "Equitable Subordination" includes claims by the Debtor or the Trustee to subordinate the claims or interests of any party pursuant to the provisions of 11 U.S.C. § 510(c).

Equity Security Holders: "Equity Security Holders" shall include all Persons who hold a membership interest in the Debtor.

Estate: "Estate" means, as to the Debtor, the estate created for the Debtor by Section 541 of the Bankruptcy Code upon commencement of its Chapter 11 case.

Estate Assets: "Estate Assets" means all of the Debtor's property, including without limitation, any income, profits and proceeds, along with the assets owned by the Debtor as well as any other entities substantively consolidated into the Debtor, including but not limited to the Debtor's Equipment, Inventory, available Cash, Accounts Receivable, and the claims arising from the Litigation Claims. Any reference in this Plan to liquidation proceeds, net liquidation proceeds, or proceeds of liquidation or similar language shall contemplate this definition.

Estimated Claim: "Estimated Claim" means the amount at which the Bankruptcy Court or, where required by applicable law, the District Court, estimates any Claim against the Debtor which is contingent, unliquidated or disputed, for the purpose of (a) allowance under Section 502(c) of the Bankruptcy Code or (b) assisting the Bankruptcy Court in making the findings required for Confirmation of this Plan pursuant to Sections 1129(a)(7)(A)(ii) and (a)(11) and, if necessary, Sections 1129(b)(1) and (2) of the Bankruptcy Code.

Executory Contracts: "Executory Contracts" shall mean any contracts which are described as executory contracts within the meaning and effect of 11 U.S.C. 365, which will be either Assumed Contracts or Rejected Contracts under this Plan .

Executory Contract Claims: "Executory Contract Claims" shall mean any Claims, including future rights to payments, which arise from the Debtor's action in assuming various Executory Contracts.

Executory Contract Creditors: "Executory Contract Creditors" shall mean any Creditors whose Claims, including future rights to payments, arise from the Debtor's action in assuming or rejecting Executory Contracts.

Final Distribution: "Final Distribution", when used with respect to an Allowed Claim, means the Distribution to be made on the Final Distribution Date to fully pay all amounts available to be paid to holders of Allowed Claims pursuant to this Plan.

Final Distribution Date: "Final Distribution Date", when used with respect to an Allowed Claim of an Unsecured Creditor, means the date on which the payment is made in the fourth quarter of the fifth year following the Effective Date, as provided herein. When used with respect to the Allowed Claim of the Secured Lender, "Final Distribution Date" means the 15th day of the 360th month following the Initial Distribution Date.

Final Order:  "Final Order" means an Order of the Bankruptcy Court, the implementation, operation or effect of which has not been stayed and as to which Order (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing or *writ of certiorari* has expired and as to which no appeal or petition for review or rehearing or *certiorari* has been taken and is pending.

Governmental Unit: "Governmental Unit" means any foreign, provincial, federal, state, local or municipal (a) government, (b) governmental agency, (c) governmental commission, (d) governmental department, (e) governmental bureau, (f) governmental ministry or (g) governmental entity.

Guarantors: "Guarantors" means any person or entity who executed a personal guaranty in favor of the Secured Lender for any money loaned which is secured by the Property.

Initial Distribution Date: For Unsecured Creditors, the "Initial Distribution Date" will occur 90 days after the Effective Date; for Secured Lender, the "Initial Distribution Date"  will be 15th day of the first full month following the Effective Date.

Insider: "Insider" shall have the same meaning as set forth in the Bankruptcy Code.

Interest: "Interest" shall mean the rights held in any equity security by any equity security holder as such terms are defined in 11 U.S.C. § 101.

Lien: "Lien" means, with respect to any of the Debtor's assets or property, along with the other Estate Assets, any mortgage, lien, pledge, charge, security interest, encumbrance or other security device of any kind affecting such asset or property.

Litigation Claims: "Litigation Claims" shall refer to any claim brought by the Debtor, Debtor-in-Possession or the Reorganized Debtor to recover fraudulent, preferential or otherwise avoidable transfers, or any other claim which the Debtor, Debtor-in-Possession or Reorganized Debtor may hold.

Litigation: "Litigation" shall mean shall mean the pursuit of any Litigation Claims by the Debtor, Liquidated Debtor, or Distribution Agent seeking to recover assets, including receivables, and those which were the subject of fraudulent, preferential or otherwise avoidable transfers, or any other pursuit of legal remedies in a court of law that shall be necessitated by this bankruptcy filing or the implementation of this Plan.

Net Principal: "Net Principal" shall mean the amount of principal due to Secured Lender, as of the Petition Date, pursuant to the terms of the Promissory Note and Mortgage executed by the Debtor in favor of Secured Lender as determined by the value of the Property and net of any post-petition payments made to Secured Lender between the Petition Date and the Effective Date, which will reduce the Principal to the net principal.

Non-Insider: A Non-Insider is any creditor or other party in interest who is not an Insider as defined herein.

Order: "Order" means an order or judgment of any court of competent jurisdiction.

Operations: "Operations" includes the revenue-generating functions of the Resort and Spa, including, but not limited to, the sale of hotel rooms, spa services and products, events and food and beverages.

Person: "Person" means any person, individual, partnership, corporation, limited liability company, joint venture company, association or other entity of whatever kind, whether or not for profit, including, but not limited to, any "person" as that term is defined in Section 101(41) of the Bankruptcy Code, but excluding any Governmental Units.

Petition Date: "Petition Date" means October 28, 2010.

Plan: "Plan" means this Chapter 11 Plan of Reorganization, Dated as of April 6, 2011, filed by the Debtor-in-Possession, and all schedules and other exhibits hereto, as well as any amendments, supplements, or modifications submitted by the Debtor-in-Possession in a manner consistent with the provisions of this Plan and the Bankruptcy Code.

Plan Distribution Period: "Plan Distribution Period" means the period commencing on the Effective Date and, for Unsecured Creditors, continuing for a period of five years, with Distributions being made on a quarterly basis, and for Secured Lender, continuing for a period of ten years, with Distributions being made on a monthly basis on the 15th day of each month.

Priority Claim: "Priority Claim" means any Claim entitled to priority pursuant to Bankruptcy Code §§ 507, 503, or other applicable law.

Principal: "Principal" shall mean the amount of principal due to Secured Lender, as of the Petition Date, pursuant to the terms of the Promissory Note and Mortgage executed by the Debtor in favor of Secured Lender as measured by the value of the Property collectively valued at $13,857,816.67.

Proof of Claim: "Proof of Claim" means any proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rules 3001 and 3002.

Proof of Interest: "Proof of Interest" means any proof of interest filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rule 3002.

Personal Property. "Personal Property" means any assets owned by the Debtor, other than the Property, described below.

Property:   "Property" means of the real property and improvements as more particularly described on **Exhibit "B"** to the Disclosure Statement.

Rejected Contracts: "Rejected Contracts" means those executory contracts and/or unexpired leases either affirmatively rejected or not assumed prior to confirmation of this Plan.

Schedules: "Schedules" means the schedules and summary of schedules, and any amendments thereto, filed in this Chapter 11 case by the Debtor.

Secured Claim: "Secured Claim" means an Allowed Claim of a Creditor which is secured by a lien on any property of the Debtor's estate, and with respect to the Allowed Claim of a Creditor which is secured by a lien on any property of the other Estate Assets, to the extent of the value, determined pursuant to Bankruptcy Code § 506(a), of such Creditor's interest in the estate's interest in such property, or, in the absence of a Final Order determining secured status, the entire amount of the Allowed Claim as indicated in the corresponding Proof of Claim.  Except where the Claim arises from a nonrecourse loan, if the value of such Creditor's interest in the Debtor's interest in the subject property is less than the amount of the Allowed Claim, then such deficiency shall constitute an Unsecured Claim.  "Secured", when used as an adjective modifying the term "Claim", has the same corresponding meaning.

Secured Lender: "Secured Lender" or "Wells Fargo," as appropriate, means Wells Fargo Bank.

Subordinated Claim: "Subordinated Claim" means any Allowed Claim which this Court, by separate Order of this Court, including the Confirmation Order, subordinates pursuant to 11 U.S.C. §510(c).

Trade Creditor: "Trade Creditor" means any person or entity which holds a Claim by virtue of amounts owed by the Debtor for products or services supplied or rendered in furtherance of Operations.

Unexpired Leases: "Unexpired Leases" means any leases of real or personal property described as unexpired leases within the meaning and effect of 11 U.S.C. § 365 which will be either Assumed Contracts or Rejected Contracts under this Plan.

Unsecured Claim: "Unsecured Claim" means any Claim, held by the Non-Insider Creditors of the Debtor, other than an Administrative Expense Claim, Priority Claim, Secured Claim, or Tax Claim, and includes (a) the deficiency portion of an undersecured Claim, (b) the Claims of Insiders (as that term is defined above), and (c) any Claims for contract or lease rejection damages.

Unsecured Creditor: "Unsecured Creditor" means any Creditor holding an Unsecured Claim.

9.03    Severability.    If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.04    Binding Effect.    The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

9.05    Captions.    The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

9.06    Controlling Effect.    Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida and those of the United States govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

# ARTICLE X
## EFFECT OF CONFIRMATION

10.01 <u>Binding Effect of Confirmation.</u>  In accordance with § 1141(a) of the Bankruptcy Code, the provisions of a confirmed plan bind the Debtor, any entity issuing securities under the Plan, any entity acquiring property under the Plan, and any Creditor, equity security holder, or general partner in the Debtor, whether or not the Claim or Interest of such Creditor, equity security holder or general partner is impaired under the Plan and whether or not such Creditor, equity security holder or general partner has accepted the Plan.

10.02 <u>Limitation on Guarantor Liability</u>.  Additionally, based upon the contributions to the Reorganized Debtor of:  (A) $5,000,000.00 of non-Debtor cash, (B) all of the equity in ODG, (C) $4,000,000.00 from the Wachovia Securities Walgreens Portfolio's operations, and (D) along with the cash flow, net of the foregoing, to be used as additional working capital for both the improvement of the subject Property and to assist in the liquidity and operational cash flow of the Reorganized Debtor, all as additional means for execution of the Plan obligations, the Guarantors shall have no liability to Secured Lender over and above the Net Principal owed to Secured Lender, to be determined as outlined above.  Furthermore, any action against any of the Guarantors shall be stayed indefinitely pending the timely payment of Plan payments to Secured Lender during the Plan Distribution Period, as outlined above.

# ARTICLE XI
## OTHER PROVISIONS

### 11.1     Confirmation Order

The Confirmation Order shall contain all injunctions, including those set forth in Articles V and X above, and other orders that may be necessary to implement the Plan.  To the extent necessary, the Confirmation Order shall contain any such provisions as may be necessary to provide for the substantial consummation of the Plan on the Effective Date.


### 11.2     No Admissions

This Plan provides for the resolution, settlement, and compromise of all Claims against the Debtor, including those claims against third parties derived from Claims against the Debtor. No proposed course of conduct contemplated herein shall be construed as legally or equitably binding upon the Debtor, or any other party, prior to the Confirmation Date.


### 11.3     Amendments

The Debtor retains the right to amend, modify, or supplement this Plan at any time prior to or after the Confirmation Hearing, to the full extent that this is authorized by law.  Notice of any such amendment which materially adversely affects any Creditors or Equity Security Holders shall be sent to such parties as the Bankruptcy Court may direct.


### 11.4     Notices

All notices, motions, objections, or affidavits required by this Plan to be served on the Debtor-In-Possession or Reorganized Debtor shall be in writing, addressed as follows:

Steven M Berman, Esq. and
Hugo S. deBeaubien, Esq.
Shumaker, Loop & Kendrick, LLP
101 E. Kennedy Blvd, Suite 2800
Tampa, FL  33602


and shall be sent by United States first class mail or overnight delivery service or shall be made by hand delivery, but telecopy transmission alone shall not suffice as valid notice pursuant to this Plan.

11.5    Construction

Where not inconsistent or in conflict with the provisions of this Plan, the words and phrases used herein shall have the meanings ascribed thereto in the Bankruptcy Code and in the Bankruptcy Rules.


11.6    Dates

Rule 9006 of the Federal Rules of Bankruptcy Procedure shall govern the calculation of any dates or deadlines referenced in the Plan.


11.7    Substantial Consummation

The Plan shall be deemed substantially consummated immediately upon the occurrence of the Effective Date and the Initial Distribution to the Unsecured Creditors and the Secured Lender.  Upon such substantial consummation, the Debtor may request the Bankruptcy Court to enter a Final Decree closing the case and for such other orders that may be necessary and appropriate.

11.8    Surcharge

The Debtor retains the right to bring any appropriate claims to surcharge the collateral of any Secured Creditors pursuant to 11 U.S.C. §506 and other applicable law.

Dated: April 6, 2011

Respectfully submitted,

By: /s/ William E. Touloumis
**WILLIAM E. TOULOUMIS**
*Managing Member, Olympia Investment Group, LLC, as Managing Member of the Debtor*

-and-

By: /s/ Steven M. Berman
**STEVEN M. BERMAN, ESQ.**
Florida Bar No. 856290
sberman@slk-law.com
**HUGO S. DEBEAUBIEN, ESQ.**
Florida Bar No. 058100
bdebeaubien@slk-law.com
101 E. Kennedy Blvd., Suite 2800
Phone (813) 229-7600
Facsimile (813) 229-1660
*Attorneys for the Debtor*