UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                              Chapter 11

S.H.S. RESORT, LLC,                                 Case No. 10-25886(MGW)

                Debtor.
_____/

### SUPPLEMENT TO GERMAN AMERICAN CAPITAL'S PROPOSED PROVISIONS FOR CONFIRMATION ORDER RELATING TO THE COURT'S PROPOSED INJUNCTION REGARDING NON-DEBTOR GUARANTORS

On May 25, 2011, the Court indicated that, in confirming the Second Amended Plan of Reorganization ("SAP") proposed by the Debtor, German American Capital Corporation ("GAC") would be temporarily enjoined from pursuing certain non-Debtor individuals and entities that guaranteed certain promissory notes entered into by the Debtor, and now held by GAC (the "Guarantors").

On June 1, 2011, at the Court's invitation, GAC filed proposed language [D.E. 250][1] (the "Initial GAC Proposal") to be included in the Confirmation Order such that, notwithstanding the proposed injunction (i) GAC would receive or retain under the SAP at least as much as GAC would receive if the Debtor were liquidated under Chapter 7,[2] and (ii) the limitation on GAC's ability to proceed against the Guarantors would be modified in order not to run afoul of 11 U.S.C. § 524(e) by improperly granting relief for non-debtors.

---

[1] A copy of D.E. 250 is attached hereto as Exhibit A for the Court's convenience.

[2] Specifically, if the Debtor were liquidated, GAC would receive at least its collateral (*i.e.*, the Resort Property) plus the unfettered right to proceed against the Guarantors for any deficiency amounts. Because the Guarantors' equity interests in ODG which are being transferred to the Debtor possess considerable value, protecting against the improper dissipation of the value of these equity interests is imperative if the dictates of 11 U.S.C. § 1129(a)(7) are to be met.

Thereafter, the Parties attended mediation in a good faith and sincere effort to mutually agree upon, *inter alia*, language regarding the proposed injunction. The Parties failed to reach a consensus.

Therefore, in furtherance of the Court's intention regarding the above-referenced injunction, and supplemental to the Initial GAC Proposal [D.E. 250],[3] GAC proposes that the following language also be included in the Confirmation Order:

1. **The Debtor's proposed payments on the GAC Unsecured Claim – *i.e.*, $500,000 per year for four years with an additional $2 million balloon payment at the expiration of four years – should be secured by a second mortgage on the Property of the Debtor.** This provision seeks to address the fact that, absent the injunction, GAC would be able to immediately pursue the Guarantors for the $4 million from the sale of the Allstate Portfolio, which is being used instead to reduce GAC's Secured Claim.

2. **The Debtor and the Guarantors shall immediately notify the Court and GAC of all litigation commenced against Olympia Development Group ("ODG"), the Debtor or any Guarantor.** This provision addresses the issue that if GAC is to be prohibited from pursuing the Guarantors' assets, which are mainly comprised of their equity interest in the Debtor and ODG, other potential judgment creditors should not be permitted to freely access those assets during the injunction period. At a minimum, the Court and GAC should be made aware of all litigation that could potentially render some or all of the assets of ODG and the Debtor unavailable to ultimately satisfy the Guarantors' obligations to GAC. In light of the minimal information available to the parties herein and the Court with respect to ODG, a process of this nature is essential to insure proper information is available to all relevant constituencies.

---

[3] So there is no misunderstanding, the proposed protections below are in addition to the proposed protections contained in D.E. 250.

**3. The Debtor and ODG shall – in addition to the Guarantors – also guarantee all deficiency amounts owed to GAC.** The rationale for this provision is that, presently, GAC could pursue the Guarantors' stock in ODG. Upon the completion of the stock transfer to the Debtor, the Debtor reaps the benefit of any value in the assets of ODG transferred thereby into the Debtor. Meanwhile, GAC– after the expiration of the injunction period – no longer has the Guarantors' ODG stock as an asset to pursue, but rather is then limited in seeking to enforce any judgment to obtaining a charging order in connection with the Guarantors' membership interests in the Debtor limited liability company. The ability to proceed against limited liability company membership interests is inferior to the ability to pursue a shareholder's interest in a corporation. *See, e.g.*, Fla. Stat. §§ 608.432, 608.433. *See also Olmstead v. Federal Trade Commission*, 44 So. 3d 76, 78-82 (Fl. 2010). As such, to comply with 11 U.S.C. § 1129(a)(7), GAC should at a minimum have the ability to proceed directly against the Debtor, ODG or the assets of either entity, on the Guarantors' obligations for any deficiency amount.

**4. The injunction will automatically terminate – and GAC will be permitted to undertake all actions against the Guarantors – upon the Debtor's default of its obligations under the SAP. In addition to all other events of default, in the context of the injunction, the Debtor will be deemed to have defaulted on its obligations under the SAP – and the injunction will automatically terminate – if the business operations of the Debtor fail to attain any of the following performance thresholds:**

    **A. For Year 1 to Year 3 of the SAP:**

        **1. Net Operating Income of at least $1 million, or**

        **2. Total Revenue of at least $8.5 million, or**

        **3. Gross Operating Profit of at least $2.1 million.**

  B. For Year 4 and Year 5 of the SAP:

    1. Net Operating Income of at least $1.2 million, or

    2. Total Revenue of at least $9.3 million, or

    3. Gross Operating Profit of at least $2.4 million.

This provision is necessary to protect GAC in the event the business operations of the Debtor radically underperform the projections upon which the SAP is based. The default thresholds for Net Operating Income, Total Revenue and Gross Operating Profit represent 80% of the performance projections provided by the Debtor for these criteria.

Dated: June 28, 2011

              */s/ Hywel Leonard*_____
              Hywel Leonard
              Florida Bar Number 296376
              CARLTON FIELDS, P.A.
              Post Office Box 3239
              Tampa, Florida 33601-3239
              Telephone: (813) 223-7000
              Facsimile: (813) 229-4133
              hleonard@carltonfields.com
              --and--
              Merrick L. Gross
              Florida Bar Number 716677
              CARLTON FIELDS, P.A.
              Miami Tower
              100 S.E. Second Street, Suite 4200
              Miami, Florida 33131-2114
              Telephone: (305) 530-4046
              Facsimile: (305) 530-0055
              mgross@carltonfields.com

              Counsel for German American Capital Corporation

# **CERTIFICATE OF SERVICE**

I hereby certify that on **June 28, 2011**, I electronically filed the foregoing Supplement to Proposed Confirmation Order Provisions, and served the foregoing, via the Court's electronic transmission facilities upon the Filing Users registered to receive filings in this case.

*/s/ Hywel Leonard*
Attorney

# EXHIBIT A

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

In re:                                              Chapter 11

S.H.S. RESORT, LLC,                                 Case No. 10-25886(MGW)

                Debtor.
_____/

### GERMAN AMERICAN CAPITAL'S PROPOSED PROVISIONS FOR CONFIRMATION ORDER RELATING TO THE COURT'S PROPOSED INJUNCTION REGARDING NON-DEBTOR GUARANTORS

On May 25, 2011, the Court determined that, in conjunction with confirming the Second Amended Plan of Reorganization ("SAP") proposed by the Debtor, creditor, German American Capital Corporation ("GAC"), would be temporarily enjoined from pursuing certain non-Debtor individuals and entities that guaranteed certain promissory notes entered into by the Debtor, and now held by GAC (the "Guarantors"). Specifically, the Court's stated its intention would be to enjoin GAC from pursuing the Guarantors for the remainder of amounts owed by the Debtor to GAC which will not be paid under the terms of the SAP while the Debtor performs its obligations under the SAP and the assets held by Olympia Development Group, Inc. ("ODG") (an entity to be transferred to the Debtor by the Guarantors) are liquidated in an orderly fashion over a four year period.

In furtherance of the Court's intention regarding the above-referenced injunction, GAC proposes that the following language be inserted into the Confirmation Order:

**The SAP proposes that the Guarantors on the Debtor's debts now held by GAC be ultimately released from their obligations without full payment of their guaranty**

19145968.1

obligations. The Court does not approve the release of the Guarantors from their obligations.

The Court will order that GAC be enjoined for a period of time from pursuing claims, against the Guarantors arising from the Guarantors guaranty of debts incurred by the Debtor and held by GAC, with the following conditions:

1. The testimony is that the non-Debtor Guarantors have significant assets including, at a minimum, any surplus from the sale of certain real and personal property within the Allstate Portfolio, the Naples property carved out of the sale of the Allstate Portfolio and the real and personal property within Wachovia Securities Portfolio. The testimony is that the Wachovia Portfolio alone will net the Guarantors $19 million to $29 million in 2015, the Debtor will net an additional $3 Million or so from the sale of significantly all of the Allstate Portfolio and the Naples property carved out of the sale of the Allstate Portfolio – which will become an asset of the Debtor – has equity of between $1.5 million and $2 million. The Debtor will therefore have sufficient assets to satisfy GAC's claims in full.

The testimony also demonstrates that the Guarantors will be forced to pay a significant defeasance fee if the Wachovia Securities Portfolio is sold prior to 2015. It is the Court's intention to enjoin GAC from pursuing the Guarantors for a limited period of time only so that GAC may be paid in full on its claims against the Guarantors from the orderly liquidation of the Wachovia Securities Portfolio and other assets, including the Allstate Portfolio and, potentially, the Naples Property.

2. In exchange for enjoining GAC from pursuing its claims against the Guarantors for four years, and to protect GAC in the interim, the Court will enjoin the

**Debtor, ODG, OIG and the Guarantors from taking certain actions which might hinder or delay GAC from ultimately collecting on the Guaranty obligations by also enjoining the Debtor, ODG, OIG and the guarantors from taking certain actions by imposing the following conditions and obligations on the Debtor, ODG, OIG and the Guarantors:**

 **(i) the Guarantors shall not sell, transfer, pledge, or encumber their equity interests in the Debtor, ODG, OIG or any other assets except as provided in the SAP;**

 **(ii) the Debtor, ODG and OIG shall not issue additional equity interests to anyone other than Guarantors in the same percentage as the Guarantors ownership of ODG;**

 **(iii) the Debtor, ODG and OIG shall not borrow additional funds;**

 **(iv) the Debtor, ODG and OIG shall not sell, transfer, pledge, or encumber its equity interests in Debtor;**

 **(v) ODG shall not terminate or materially alter any of the Walgreens leases or other material contracts which cover the real and personal property which encompass the Naples property carved out of the sale of the Allstate Portfolio, and the real and personal property within Wachovia Securities Portfolio;**

 **(vi) the management personnel of the Debtor, ODG and OIG shall not be materially changed;**

 **(vii) the business in which ODG is engaged shall not be materially changed;**

 **(viii) the Debtor, ODG and OIG shall not purchase other companies;**

 **(ix) the Debtor, ODG and OIG shall not declare dividends or make any distributions to any equity holder including the Guarantors;**

**(x)** except for ordinary course management fees, the Debtor, ODG and OIG shall not make any payments to any individual or entity related in any manner to the Debtor, ODG, OIG or the Guarantors;

**(xi)** the Debtor, ODG and OIG shall not make any payment(s) to any individual or entity, except in the ordinary course of business, which exceed $10,000, individually, or $25,000 in the aggregate per month.

**(xii) each of the Guarantors, the Debtor, ODG and OIG shall not form, invest in, or assist other companies that compete with ODG.**

**Each of the Guarantors, the Debtor, ODG and OIG shall notify GAC and the Court in the event of any breach (or circumstance that could lead to a breach) of any of the aforementioned conditions (i) to (xii) inclusive**

**3.** In furtherance of the limitations provided for above, within 10 business days following the entry of this Order, the Debtor shall provide the following information:

**(i)** a statement detailing the organization, ownership and capitalization of each of the Debtor, ODG and OIG;

**(ii)** a statement that all equity interests in the Debtor, ODG and OIG are free of liens;

**(iii)** financial statements for the Debtor, ODG and OIG, including a statement of all debts for which any entity is in default;

**(iv)** a statement of ODG's assets, including a statement regarding the title to, and condition of, any real property and other material assets owned by ODG;

**(v)** certified copies of all leases for all properties comprising the Wachovia Portfolio and a statement that all rents are current and that there are no current rent defaults;

19145968.1

**(vi)** a statement that neither GAC nor its agents will control the business of the Debtor, ODG or OIG and that no joint venture is being created;

**(vii)** monthly/quarterly/periodic reports regarding the Debtors, ODG's and OIG's respective financial condition and performance;

**(viii)** upon the request of GAC, information relating to the status of the business condition (financial or otherwise), assets, results of operations, and prospects of the Debtor, ODG and OIG.

**4.** In furtherance of the limitations provided for above, within 10 business days following the entry of this Order, each Guarantor wishing to be protected by this Order shall provide a complete financial statement to include, without limitation, the following information:

**(i)** a statement of the Guarantor's assets, including a statement regarding the title to, and condition of, any real property and other material assets owned by ODG;

**(ii)** a statement of the Guarantor's debts, and whether the Guarantor is in default on any of the debts.

**5.** GAC shall be entitled to receive the additional $3 Million or so to be netted from the sale of the certain real and personal property within the Allstate Portfolio and an additional $1.5 Million to the $2 Million from the sale of the Naples property carved out of the sale of the Allstate Portfolio when such property is sold. These payments shall be applied by GAC to reduce the amount of its claim against the Guarantors and shall be made in addition to, and not in lieu of, the payments to be made by the Debtor under the terms of the SAP on the GAC unsecured claim.

6. In exchange for the protections provided herein, the Debtor, ODG, OIG and the Guarantors are directed to pay all remaining amounts of GAC's claims upon the sale of the Wachovia Securities Portfolio.

7. Additionally, in exchange for the protections provided for herein, the Guarantors shall agree to waive all defenses to any claims arising under their guaranty of the Debtor's debt now held by GAC.

8. Failure of any of the Guarantors, the Debtor, ODG or OIG to comply with the injunction imposed by this confirmation order and terms and conditions herein shall operate to immediately and automatically terminate the injunction and permit GAC to immediately pursue all remedies against all of the Guarantors, regardless of fault. In addition, upon the default by any of the Guarantors, the Debtor, ODG or OIG under the terms and conditions of this Order, this Court will Order the immediate turnover to GAC of all ODG stock and all assets of the Debtor, OIG and ODG. Further, if the Debtor, OIG, ODG or the Guarantors default under the terms and conditions of this Order, the Guarantors agree to the immediate entry of a judgment against them for all sums that remain owed to GAC under its unsecured claim under the SAP in the percentages of their ownership interests in ODG. Further, the Court may impose such sanctions as may be appropriate,

9. The injunction will remain in effect only as long as the Debtor complies with the terms of the SAP and will dissolve immediately and automatically upon the earliest of (i) the Debtor's completion of its obligations under the SAP, (ii) the Debtor's default on its obligations under the SAP or (iii) further Order of this Court.

10. **The Court will retain jurisdiction over all aspects of the injunction set forth herein.**

Dated: June 1, 2011

*/s/ Hywel Leonard*
Hywel Leonard
Florida Bar Number 296376
CARLTON FIELDS, P.A.
Post Office Box 3239
Tampa, Florida 33601-3239
Telephone: (813) 223-7000
Facsimile: (813) 229-4133
hleonard@carltonfields.com
--and--
Merrick L. Gross
Florida Bar Number 716677
CARLTON FIELDS, P.A.
Miami Tower
100 S.E. Second Street, Suite 4200
Miami, Florida 33131-2114
Telephone: (305) 530-4046
Facsimile: (305) 530-0055
mgross@carltonfields.com

Counsel for German American Capital Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on **June 1, 2011**, I electronically filed the foregoing Proposed Provisions for Confirmation Order, and served the foregoing, via the Court's electronic transmission facilities upon the Filing Users registered to receive filings in this case.

                                              */s/ Hywel Leonard*
                                              Attorney